<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHAWN BRAXTON, | : | |
| | : | Civil Action No. 12-5155 (RBK) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| MELISSA LENHARDT, et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

Shawn Braxton
203322
Atlantic County Justice Facility
5-6- Atlantic Avenue
Mays Landing, NJ  08330
     Plaintiff <u>pro se</u>

**KUGLER,** District Judge

     Plaintiff Shawn Braxton, a prisoner confined at Atlantic County Justice Facility in Mays Landing, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that an otherwise undescribed incident, which ended on January 13, 2012, led to his being "formally charged" with unspecified criminal violations at 5:20 p.m. on January 14, 2012. Plaintiff further alleges that at 8:27 p.m. on January 14, Brigantine Police officers supplied Defendant T-Mobile with false information, including that Plaintiff was involved in a kidnapping, in order to obtain the real-time location of Plaintiff's cellular phone.[1] More specifically, Plaintiff alleges that Defendants dispatcher Melissa Lenhardt and Lieutenant T. Rehill did not obtain a court order and instead requested the information from Defendant T-Mobile through an "Exigent Circumstance Request Form," falsely alleging "exigent circumstances" in the nature of a kidnapping.[2]

Plaintiff alleges that the incident that gave rise to the criminal charges against him had ended a day earlier, on January 13, 2012, that kidnapping was not one of the pending charges against him, and that there were no exigent circumstances as of 8:27 p.m. on January 14, 2012.

---

[1]  It is not clear whether Plaintiff is referring to Global Positioning System ("GPS") data given off by his cell phone or cell-site data, which does not identify a cell phone user's precise location, but instead only identifies the cell phone tower nearest a user at the time of a call. See generally U.S. v. Jones, Criminal No. 05-0386, 2012 WL 6443136, *2-*3 (D.D.C. Dec. 14, 2012).

[2] Plaintiff has not provided copoies of the "Exigent Circumstances Request Form" or the alleged "charge sheets."

Plaintiff alleges that Defendant T-Mobile should have asked for copies of the "charge sheets," which would have revealed the absence of exigent circumstances.

Plaintiff seeks unspecified compensatory damages for the alleged violation of his "constitutional rights." (Complaint, ¶ 5, Relief.) The Court construes this as an attempt to state a claim for unlawful search in violation of the Fourth Amendment.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244-45 (3d Cir. 2013). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure, as explained in the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However,

> [w]hile a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more

> than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (2007) (citations omitted). Moreover, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. at 678 (2009). In short, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. (quoted in Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012)). See also Covington v. International Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) (cautioning that the Twombly/Iqbal standard "[does] not provide a panacea for defendants").

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen

>of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

IV.   ANALYSIS

A.   The Fourth Amendment Claim against Police Defendants

The Fourth Amendment to the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, see Bailey v. United States, 133 S.Ct. 1031, 1037 (2013), provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness,'" Missouri v. McNeely, No. 11-1425, 2013 WL 16285934, *15 (U.S. April 17, 2013) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)), which "is measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette, 519 U.S. 33, 38 (1996) (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991)). "Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" Samson v. California, 547 U.S. 843, 848 (2006) (quoting United States v. Knights, 534 U.S. 112, 118-19 (2001)).

The Supreme Court has several times addressed the application of the Fourth Amendment prohibition against unreasonable searches to situations involving "listening" or "tracking" devices.  In Olmstead v. United States, 277 U.S. 438 (1928) the Supreme Court held that the wiretapping of a subject's private telephone line did not violate the Fourth Amendment because the wiretapping had been accomplished without a physical trespass by the government.  In Katz v. United States, 389 U.S. 347 (1967), however, a case involving the use of a listening device at a public telephone booth, which device recorded the subject's end of a telephone conversation, the Court overruled Olmstead, holding that the Fourth Amendment "protects people, not places," 389 U.S. at 351, and its reach "cannot turn upon the presence or absence of a physical intrusion into any given enclosure."  389 U.S. at 353.  Instead, "a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." Kyllo v. U.S., 533 U.S. 27, 33 (2001) (citing Katz, 389 U.S. at 361 (1967) (Harlan, J., concurring)).  This enquiry embraces two discrete questions: whether the individual, by his conduct, has exhibited an actual subjective expectation of privacy, and whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable. Katz, 389 U.S. at 361 (Harlan, J., concurring).

Applying the Katz test in Smith v. Maryland, 442 U.S. 735 (1979), the Supreme Court considered whether installation and use of a pen register[3] at police request constituted a "search" within the meaning of the Fourth Amendment.  As a preliminary matter, the Court noted that the pen register was installed on telephone company property at the telephone company's central

---

[3] In Smith v. Maryland, the Supreme Court described a "pen register" as "'a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released.  It does not overhear oral communications and does not indicate whether calls are actually completed.'"  Smith, 442 U.S. at 736 n.1 (citation omitted).

office. Thus, there was no police intrusion into the individual's property, leaving the Fourth Amendment claim to turn on whether the individual had a legitimate expectation of privacy in the telephone numbers that he dialed,[4] a notion that the Court rejected outright.

> … First, we doubt that people in general entertain any actual expectation of privacy in the numbers they dial. All telephone users realize that they must "convey" phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed. All subscribers realize, moreover, that the phone company has facilities for making permanent records of the numbers they dial, for they see a list of their long-distance (toll) calls on their monthly bills. In fact, pen registers and similar devices are routinely used by telephone companies "for the purposes of checking billing operations, detecting fraud and preventing violations of law."

Smith v. Maryland, 442 U.S. at 742 (citations omitted). In sum, the Court found that, "Although subjective expectations cannot be scientifically gauged, it is too much to believe that telephone subscribers, under these circumstances, harbor any general expectation that the numbers they dial will remain secret." Id. at 743. However, the petitioner there argued that, whatever the expectations of telephone users in general, "he demonstrated an expectation of privacy by his own conduct, … since he 'us[ed] the telephone *in his house* to the exclusion of all others.' Brief for Petitioner 6 (emphasis added)." Id. "But the site of the call is immaterial for purposes of analysis in this case. Although petitioner's conduct may have been calculated to keep the *contents* of his conversation private, his conduct was not and could not have been calculated to preserve the privacy of the number he dialed." Id. (emphasis in original).

> Second, even if petitioner did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not "one that society is prepared to recognize as 'reasonable.'" This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.

Smith v. Maryland, 442 U.S. at 743-44 (citations omitted).

---

[4] Here, there was no issue regarding recording of the content of the subject's conversation.

Turning to the use of tracking devices, in two cases where police had suspected that chemicals were being purchased for use in the manufacture of illicit drugs, the Supreme Court evaluated the use of "beepers," placed in chemical containers with the permission of the sellers, to track the movements of those containers after they were sold to the suspects.  In United States v. Knotts, 460 U.S. 276 (1983), the Court found that the use of a tracking device to follow movements on public highways did not implicate Fourth Amendment concerns, because the subjects had no reasonable expectation of privacy while in plain view on public thoroughfares. By contrast, the use of a tracking device to determine the specific location of tracked material within a private residence did constitute a search within the meaning of the Fourth Amendment, because that fact "could not have been visually verified" from outside the house.  United States v. Karo, 468 U.S. 705, 715 (1984).

More recently, the Supreme Court has held that the government's installation of a GPS device to the underbody of a vehicle, and its use of that device to monitor the vehicle's movements electronically, constitutes a "search" of "effects" within the meaning of the Fourth Amendment.  See U.S. v. Jones, 132 S.Ct. 945 (Jan. 23, 2012).  The Court further emphasized that, "[s]ituations involving merely the transmission of electronic signals without trespass[, however,] remain subject to Katz analysis." U.S. v. Jones, 321 S.Ct. at 953 (emphasis in original).

Before and after Jones, various federal courts have applied the Knotts/Karo analysis to find that a person has no reasonable expectation of privacy in the Global Positioning System ("GPS") tracking data voluntarily given off by a cellular phone, United States v. Skinner, 690 F.3d 772 (6th Cir. Aug. 14, 2012), or in historical cell-site tower information, U.S. v. Madison, Criminal No. 11-60285, 2012 WL 3095357, *7-*9 (S.D. Fla. July 30, 2012), U.S. v. Graham,

846 F.Supp.2d 384 (D.Md. 2012), or in prospective, or "real time," cell site location information ("CSLI"), U.S. v. Navas, 640 F.Supp.2d 256, 263-64 (S.D.N.Y. 2009), rev'd on other grounds, 597 F.3d 492 (2d Cir.), cert. denied, 131 S.Ct. 320 and 330 (2010).

Prior to the Jones decision, and in construing provisions of the Stored Communications Act, 18 U.S.C. § 2701 et seq., the U.S. Court of Appeals for the Third Circuit applied the Knotts/Karo analysis to find that, in the absence of evidence that cell-site location information could extend to the realm of the interior of a home, it would not accept the conclusion that CSLI should be considered information from a tracking device that requires a showing of probable cause, within the meaning of the Fourth Amendment, for its production. See In re Application of U.S. for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government, 620 F.3d 304, 311-13 (3d Cir. 2010).  In dicta, and in reliance on Karo, the Court of Appeals nevertheless expressed doubt that a cell phone customer has "voluntarily" shared his location information with a cellular provider in any meaningful way, especially with respect to location in a private residence. In re Application, 620 F.3d at 317-19.

Finally, under the Fourth Amendment, warrantless government searches are reasonable and, thus, do not violate the Amendment, when they are required by exigent circumstances. See, e.g., Kentucky v. King, 131 S.Ct. 1849, 1856-57 (2011).  Exigent circumstances include law enforcement's need to provide emergency assistance to an occupant of a home, to engage in "hot pursuit" of a fleeing suspect, to enter a burning building to put out a fire and investigate its cause, or to prevent the imminent destruction of evidence. Missouri v. McNeely, 2013 WL 16285934 at *5 (citations omitted).

Here, with respect to the claim against Defendants Dispatcher Lenhardt and Lieutenant Rehill, Plaintiff has failed to allege facts raising his Fourth Amendment claim to relief above a

speculative level. To the contrary, the allegations of the Complaint are vague and conclusory. For example, Plaintiff fails to allege any facts regarding the circumstances of the "incident" giving rise to the filing of criminal charges against him, the nature of the charges filed against him, his status at the time Lenhardt and Rehill requested information from T-Mobile, the type of CSLI information they requested, the type of information T-Mobile provided (if any), and to what use (if any) the police put that information. All of these facts are necessary to any meaningful evaluation of whether Plaintiff adequately has alleged that he had a reasonable expectation of privacy in the requested CSLI information, that a "search" actually occurred, and that any such search was "unreasonable" within the meaning of the Fourth Amendment. Cf., e.g., Jayne v. Sprint P.C.S., Civil No. 07-2522, 2010 WL 2817169, *10-*15 (E.D. Cal. July 15, 2010) (Report and Recommendation),[5] Report and Recommendation adopted, 2010 WL 3431817 (E.D. Cal. Aug. 31, 2010), aff'd, No. 10-17310, 2012 WL 4715094 (9th Cir. Oct. 4, 2012).

For the foregoing reasons, the claims against Defendants Lenhardt and Rehill will be dismissed without prejudice. Plaintiff will be granted leave to apply to re-open and file a proposed amended complaint.

B.     The Fourth Amendment Claim Against T-Mobile

Plaintiff has alleged that T-Mobile received from police an "Exigent Circumstances Request Form" indicating that his CSLI was requested in connection with a kidnapping. Plaintiff

---

[5] In Jayne, the Magistrate Judge recommended granting summary judgment in favor of police where, among other factors, the incident giving rise to a police request for cell-site information involved the subject stalking, restraining, and threatening his victim, demonstrating that the subject posed an immediate threat to the well-being of the victim and justifying the initial request for information on an exigent basis, and where, in addition, the subject failed to present any evidence that police ever received the requested cell-site information or used it to locate the subject.

asserts that T-Mobile should have gone beyond the face of the form to obtain the "charging documents," which he alleges would have revealed that no kidnapping charge had been leveled against him.  Again, the Court construes these allegations as an attempt to state a claim against T-Mobile for violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches.  However, Plaintiff has failed to allege any facts that would permit this Court to treat T-Mobile as a "state actor" subject to liability under § 1983 for any violation of Plaintiff's Fourth Amendment rights.

"[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'"  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citations omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" at times may demand to be treated "as if a State has caused it to be performed."  Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  Id. (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)).

State action exists under § 1983 only "'when it can be said that the government is responsible for the specific conduct of which the plaintiff complains.'"  Brentwood Academy, 531 U.S. at 295 (quoting Blum v. Yaretsky, 457 U.S. 991, 2004 (1982)).  "Put differently, deciding whether there has been state action requires an inquiry into whether 'there is a sufficiently close nexus between the State and the challenged action of [the defendants] so that the action of the latter may fairly be treated as that of the State itself.'"  Mark v. Borough of

Hatboro. 51 F.3d 1137, 1142 (3d Cir.) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)), cert. denied, 516 U.S. 858 (1995).

A private entity can be sued under § 1983 where (1) it "has exercised powers that are traditionally the exclusive prerogative of the State," Mark, 51 F.3d at 1142 (citation omitted); (2) the State and the private party have acted in concert or jointly to deprive a plaintiff of his rights, Adickes v. S.H. Kress & Co., 398 U.S. 144, 170-171 (1970); (3) the State has permitted a private party to substitute his judgment for that of the State, Cruz v. Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984); or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 620 (1991); Harvey v. Plains Twp. Police Department, 421 F.3d 185 (3d Cir. 2005); Mark, 51 F.3d at 1143.  See also DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989) (Fourteenth Amendment's "purpose was to protect the people from the State, not to ensure that the State protected them from each other"); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) ("Individuals . . . have no right to be free from infliction of [constitutional] harm by private actors"), cert. denied , 519 U.S. 1111 (1997).

Here, Plaintiff alleges no facts that would permit this Court to find that Defendant T-Mobile acted under color of state law within the meaning of § 1983 when it provided CSLI information to police.  Defendant T-Mobile merely responded to what appeared to be a legitimate police request for information regarding criminal activity.  In this way, T-Mobile's actions are indistinguishable from those of any witness who provides information pertinent to a criminal investigation and is not subject to liability for his or her actions.  Cf., e.g., Moldowan v. City of Warren, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not

12

expose a private individual to liability for actions taken 'under color of law.'"); Blake v. Minner, Civil No. 07-0230, 2007 WL 3090802, *3 (D.Del. Oct. 19, 2007) (a witness at trial is not a state actor). Accordingly, the Fourth Amendment claim against Defendant T-Mobile will be dismissed with prejudice, because it does not appear that Plaintiff can replead with facts that would subject Defendant T-Mobile to § 1983 liability for its actions.

V.   CONCLUSION

For the reasons set forth above, all claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.[6] However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to state a claim against Defendants Lenhardt and Rehill for violation of his Fourth Amendment rights, the Court will grant Plaintiff leave to file an application to re-open accompanied by a proposed amended complaint with respect to that claim only.[7]

An appropriate Order follows.

                                            s/Robert B. Kugler
                                            Robert B. Kugler

---

[6] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ... The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted). In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules.

[7] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

                                          United States District Judge

Dated:   June 28, 2013